# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CLEVELAND CLIFFS, INC.,**
**Employer Below, Petitioner**

**v.) No. 24-ICA-51**          (JCN: 2022010927)

**BILLY CECIL,**
**Claimant Below, Respondent**

**FILED**
**May 23, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Cleveland Cliffs, Inc., ("Cleveland") appeals the January 3, 2024, decision of the Workers' Compensation Board of Review ("Board"). Respondent Billy Cecil timely filed a response.[1] Cleveland did not file a reply. The issue on appeal is whether the Board erred in reversing the March 28, 2023, decision of the claim administrator, and granting Mr. Cecil's request for a left medial meniscus repair and possible revision reconstruction of the ACL.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the compensable injury in this case, Mr. Cecil had filed a claim for a left knee injury that occurred on August 12, 2019. In his completed Employees' and Physician's Report of Occupational Injury or Disease for that claim, Mr. Cecil indicated that he sustained a left knee injury while dismounting from a bulldozer. Mr. Cecil sought treatment at Welch Community Hospital Urgent Care on the date of the injury. The diagnosis was left knee pain and left knee sprain. An x-ray taken on August 12, 2019, showed tricompartmental osteoarthritis with no fracture, deformity, or large joint effusion.

Robert Kropac, M.D., performed an orthopedic examination of Mr. Cecil on August 28, 2019. Dr. Kropac diagnosed a left knee strain and ordered an MRI to rule out internal derangement with torn lateral meniscus. A left knee MRI performed on September 23, 2019, revealed small joint effusion, mild chondromalacia patella changes, a tear of the posterior horn medial meniscus, intrameniscal degenerative changes of the anterior horn,

---

[1] Cleveland is represented by Jeffrey B. Brannon, Esq. Mr. Cecil is represented by William B. Gerwig, III, Esq.

1

lateral meniscus intact, mild intrameniscal degenerative changes, and torn and swollen ACL.

Mr. Cecil returned to Dr. Kropac on September 27, 2019, to follow-up regarding the MRI. Mr. Cecil complained of knee pain when walking and standing. He stated that the pain was significantly worse when he tried to go up and down stairs. Dr. Kropac reviewed the MRI report and diagnosed a torn medial meniscus in the left knee, and an ACL rupture in the left knee. Dr. Kropac opined that these conditions were secondary to the compensable injury of August 12, 2019. Dr. Kropac requested authorization for Mr. Cecil to see Phillip Branson, M.D., for surgery on his left knee.

Mr. Cecil visited Dr. Branson on October 28, 2019. Dr. Branson's assessment was left knee ACL tear, medial meniscus tear, and early osteoarthritis. Dr. Branson recommended ACL reconstruction surgery on Mr. Cecil's left knee. On February 7, 2020, Dr. Branson performed a left knee arthroscopic ACL reconstruction and a left knee medial meniscal repair. The pre- and post-operative diagnoses were left knee medial meniscus tear and ACL tear.

The injury currently at issue in this case occurred on December 21, 2020. Mr. Cecil completed an Employees' and Physicians' Report of Occupational Injury on February 8, 2021, in which he stated that he sustained a left knee injury when his left knee gave out and popped as he hopped off an excavator. Dr. Branson, who completed the physician's portion of the application, diagnosed a left knee injury.

On January 4, 2021, Mr. Cecil followed-up with Dr. Branson. Dr. Branson noted pain in the left knee with full extension, negative effusion, and tenderness over the quadricep. A left knee x-ray revealed arthritis: Kelligren Larsen Grade II mild to moderate/varus; involving the medial and patellofemoral compartments, and patellofemoral arthritis.

On February 18, 2021, Mr. Cecil underwent an MRI arthrogram of his left knee, which revealed an ACL prosthesis in place and intact. The PCL appeared intact. There was an irregularity of the medial meniscus, consistent with a complex tear with irregular radial and horizontal oblique components, posteriomedially. A small vertical circumferential tear in the mid portion of the lateral meniscus was noted. Further, there were irregular marrow edematous findings in the proximal tibia, as well as the medial and lateral distal femur. Mild patellar cartilage irregularity/chondromalacia, and mild joint effusion were also noted.

On April 23, 2021, Dr. Branson performed a left knee arthroscopy minor partial medial and lateral meniscectomy and debridement of joint. The preoperative diagnosis was left knee medial and lateral meniscus tears, and the postoperative diagnosis was left knee

2

medial and lateral meniscus tears, medial meniscus status post repair, repair intact, and ACL intact.

Mr. Cecil began treatment with Dana Lycans, M.D., on November 1, 2021. Dr. Lycans' assessment was left knee pain with quadriceps weakness, suspected plica syndrome versus recurrent medial meniscus tear. On November 22, 2021, Mr. Cecil underwent an MRI of his left knee, which revealed a complex tear in the posterior-to-posterior junctional medial meniscus. On March 22, 2022, Dr. Lycans performed a left knee arthroscopy with medial meniscus repair and partial lateral meniscectomy. The pre-operative and post-operative diagnoses were left medial and lateral meniscus tear.

Mr. Cecil followed-up with Dr. Lycans on September 28, 2022. Mr. Cecil stated that he had been walking with a shopping cart when he turned and felt a pop in his knee. He complained of pain and buckling in the left knee following this incident. His pain was mostly lateral and did not radiate. Dr. Lycans' assessment was left knee pain and suspected lateral meniscus tear, and he recommended an additional MRI of the left knee. On October 20, 2022, Mr. Cecil underwent a left knee MRI, which revealed a complex tear of the medial meniscus and nonspecific edema of the lateral femoral condyle. Mr. Cecil followed-up with Dr. Lycans on October 26, 2022. Dr. Lycans recommended a second opinion from Chad Lavender, M.D., at Marshall Orthopedics.

Mr. Cecil began treatment with Dr. Lavender on December 12, 2022. Dr. Lavender's assessment was left knee pain and left knee patellofemoral arthritis with medial meniscus tear. Dr. Lavender opined that the ACL appeared intact and did not require surgical treatment. With regard to the medial meniscus tear, Dr. Lavender stated that he would defer to Dr. Lycans, as he stated that he was unsure whether Mr. Cecil had a new tear or a postsurgical change. Dr. Lavender further stated that if Dr. Lycans felt that this was a new tear, then he would recommend another surgery.

Mr. Cecil followed-up with Dr. Lycans on December 14, 2022. He reported continued pain and instability in the left knee on the medial joint line, and that his knee was buckling frequently. Dr. Lycans' assessment was left knee pain with medial meniscus tear. He opined that he was unsure whether Mr. Cecil's instability was caused by the knee pain and meniscus tear or whether his ACL was incompetent. Dr. Lycans recommended a left medial meniscus repair, and stated that if Mr. Cecil's ACL was incompetent, a revision reconstruction might be necessary.

On March 20, 2023, Prasadarao Mukkamala, M.D., performed an independent medical evaluation ("IME"). Dr. Mukkamala stated that Mr. Cecil was injured in 2020 while at work when he hopped down from equipment and his left knee buckled. Further, Dr. Mukkamala noted that Mr. Cecil had surgery for a prior compensable injury in 2019 and that he had returned to work for three weeks before he was again injured in December 2020. Mr. Cecil reported pain in the left knee and weakness in the left leg. However, Dr.

Mukkamala opined that Mr. Cecil did not need any further treatment, and that he had reached maximum medical improvement ("MMI") for the compensable injury. In particular, Dr. Mukkamala disagreed with Dr. Lycans' recommendation for surgery. Although Dr. Mukkamala noted that Mr. Cecil continued to be symptomatic, he opined that surgery was unlikely to improve his symptoms. Dr. Mukkamala stated that Mr. Cecil had a left knee arthritic condition with degenerative arthrosis. Dr. Mukkamala noted that Mr. Cecil had decided to go to college and change careers. Dr. Mukkamala assessed 4% whole person impairment for both the compensable injuries of August 2019 and December 2020.

On March 28, 2023, the claim administrator issued an order denying Dr. Lycans' request for surgery based on Dr. Mukkamala's IME. Mr. Cecil protested this order. By order dated January 3, 2024, the Board reversed the decision of the claim administrator. The Board concluded that a preponderance of the medical evidence established that the requested left medial meniscus repair and possible revision reconstruction of the ACL are medically necessary and reasonably required for treatment of the compensable injury. The Board weighed the medical evidence and found the opinions of Dr. Lycans and Dr. Lavender to be more credible than Dr. Mukkamala, on the basis that both are orthopedic specialists. It is from this order that Cleveland now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures.
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Cleveland asserts one assignment of error. Cleveland argues that the Board's reversal of the claim administrator's order was clearly wrong in view of the reliable, probative, and substantial evidence in the record. Cleveland contends that the Board incorrectly discounted Dr. Mukkamala's opinion simply because he is not an

orthopedist. While not raised as an assignment of error, Cleveland also argues that the Board ignored evidence regarding an intervening injury, and that both Dr. Lycans and Dr. Lavender failed to show how the surgery was reasonably related to the December 21, 2020, injury. We disagree.

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

The claim administrator must provide a claimant with medically related and reasonably necessary treatment for a compensable injury. *See* W. Va. Code § 23-4-3 (2005) and W. Va. Code R. § 85-20-9.1 (2006).

Upon review of the record, we cannot conclude that the Board's decision to reverse the claim administrator's order and grant authorization for a left medial meniscus repair and possible revision reconstruction of the ACL was clearly wrong based on the evidence. The Board found that the opinions of Dr. Lycans and Dr. Lavender, who are both orthopedic surgeons, were more credible than the opinion of Dr. Mukkamala, who is not an orthopedic specialist. Further, the medical evidence establishes that Dr. Mukkamala examined Mr. Cecil only once, and that he was less familiar with his injury and his previous surgeries than Drs. Lycans and Lavender. The Board found that the preponderance of the evidence established that the left medial meniscus repair and possible ACL revision reconstruction recommended by Dr. Lycans are medically necessary and reasonably required for treatment of the compensable injury. With our deferential standard of review in mind, we cannot conclude that the Board was clearly wrong.

Further, we find no merit in Cleveland's argument that the Board ignored evidence regarding an intervening injury. The medical evidence in the record does not support Cleveland's contention that the latest request for surgery is related to an intervening injury. The record indicates that Mr. Cecil injured his left knee twice while at work, and that he underwent multiple surgeries on his left knee. We note that Dr. Mukkamala, who reviewed extensive medical records in the claim file, did not opine that the latest request for surgery was unrelated to the injury in the claim. Instead, his recommendation against surgery was premised on his belief that another surgery would not relieve Mr. Cecil's symptoms. The Board found that the requested left medial meniscus repair and possible revision reconstruction of the ACL is medically necessary and reasonably required for treatment of the compensable injury. We defer to the Board's findings.

Accordingly, we affirm the Board's January 3, 2024, decision.

Affirmed.

**ISSUED:** May 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear